Marks, J.
The defendants were ordered by the Pratt Engineering and Machine Company of Georgia to ship, no later than February 3j 1916, thirty tons of coal to that company at Macon, Georgia. The defendants ordered their agents in Pennsylvania to ship a carload, but the load was received by the Central Railroad of New Jersey, the first carrier only, on February eleventh. By various connecting lines, the coal reached Macon, Georgia, by the plaintiff railway on March 3 or 4,1916.
The Pratt company refused to accept the car or admit any responsibility in connection therewith, and upon its refusal so to do, the plaintiff demanded payment of its freight charges from the defendants, who also refused to accept any responsibility whatever in connection with the shipment, declined to pay the charges and declined to give any instructions to the plaintiff as to the disposition of the coal. Thereupon the plaintiff stored the coal, and after keeping it for the length of time required by the laws of Georgia, advertised it for sale, but was unable to obtain any bid therefor. The charges against the shipment are conceded to be the sum of $340.55.
There were no relations between the defendants and the plaintiff or any of the connecting carriers other than those imposed by the shipment itself under the Interstate Commerce Commission Rules and Regulations.
The coal was not handled by bill of lading but by way bills and the proof does not show that there was any agreement that the consignee should pay the freight. At the time that the plaintiff received the shipment from the carrier next preceding it in the carriage, it assumed that the shipment was the property of the consignee.
The obligation of the defendants for the payment of the freight charges in case the consignee did not pay it was created when the coal was shipped. When the *737 Central Railroad of New Jersey, the first carrier, accepted the coal for transportation without prepayment of the freight charges, such act was nothing more than extending credit to the consignor, the defendants, who were bound to make the credit good without reference to any agreement between them and the consignee or to any provisions of the Property Law or Sales Act, or other laws either of this state or of Georgia or Pennsylvania, as to the party in whom, under such laws, title was or became vested at the time of making the contract or of shipment or tender.
In my opinion, as a matter of public policy, the liability for freight charges to a railroad engaged in interstate commerce — either the first carrier or of any connecting carrier — cannot be held to depend upon the question as to the relations or agreements between consignor and consignee as to who is liable therefor, or upon the questions to whom the goods belonged when shipped, or when or under what circumstances the property in the goods was in the consignor or consignee at the time of shipment or when tendered to the consignee. The law regulating these questions does not affect the right of the carrier to enforce its lien upon the goods shipped for payment of the freight charges if the consignee refuses to pay, and if the goods are sold or attempted to be sold according to law, and fail to realize the debt, then to look to the consignor, the person who created the obligation, from whose possession the goods came, and who had a right to, and who did enter into the contract for transportation.
Ownership of property shipped is not the test of liability to a railway company for freight charges but the shipper remains liable, if the consignee refuses the goods, Of course, if it was admitted by the consignee that the shipper was only his agent, and the carrier with such knowledge made the contract with the shipper as such agent, a different question would be presented, but it is not necessary for the railway com *738 pany "before proceeding against the consignor to enforce payment of its charges to assume the burden of proceeding first against the consignee to collect its charges, and attempt to prove that such consignee is the owner of the goods, and, therefore, liable .and that the consignor was the agent of the consignee. The consignee, as between the railway company and the shipper, may be regarded by the carrier as the agent of the shipper to pay the freight charges, and while the carrier is bound to accept the shipment offered to it for transportation, it may waive its right to demand prepayment, and accept the shipment with the understanding that it will collect the charges upon delivery to the consignee without losing or Waiving its rights against the consignor if it fails to collect from the consignee.
Whether it is assumed that the Central Railroad of New Jersey when tendered the coal for transportation, was to carry to destination, in which case it was necessarily agreed to do so through the agency of other and independent carriers in the line; or assumed that it was to carry safely over its own line only, and then to deliver to the next carrier, the duty of the first carrier, and that of connecting carriers to collect the transportation charges is the same. The method of connecting carriers receiving freight makes in effect one system of transportation.
The collection of lawful rates for carrying freight is a duty imposed on the carrier by law, and as the shipper did not pay the freight in advance, and the coal and way bills went into the hands of successive connecting carriers, it was proper for the last of them, each connecting carrier having a lien upon the coal for unpaid freight, to pay back charges for transportation to its line, and recover the amount together with its own charges from the shipper.
This right to collect from the shipper was not lost because the plaintiff when it received the coal from *739 the preceding carrier assumed that the shipment was the property of the consignee. The plaintiff was not bound to proceed against the consignee because of this assumption, and failing to prove it, lose its right against the consignor, because it had made an assumption not borne out by the real facts, but it had the right to proceed against either consignor or consignee regardless of who owned the coal or who it believed owned it. The law imposes upon a railroad company the absolute duty to collect transportation charges, and to relieve itself from the penalty imposed by law for failure or inability to exact the charges from the consignee, it must proceed against the consignor.
Judgment will be directed to be entered in favor of the plaintiff for the sum of $340.55 with interest, making altogether the sum of $403.45.
In my opinion, the conclusions stated by me are sustained by the following cases: Central Railroad v. Berry, 99 Misc. Rep. 560; Jelks v. Phil. & Reading R. Co., 14 Ga. App. 96; Boise Comm. Club v. Adams Exp. Co., 17 I. C. C. Rep. 115; Illinois Cent. R. Co. v. Hoopes, 233 Fed. Repr. 135; Atlantic Coast Line v. Riverside Mills, 219 U. S. 196.
Ordered accordingly.